SOPHIE GASPERINI, Plaintiff-Appellee, v. ERNEST GASPERINI, Defendant-Appellant.

First District (5th Division)   No. 76-978

Opinion filed February 10, 1978.

Donald Thomas Bertucci, of Chicago, for appellant.

Gomberg and Schaps, of Chicago (Nathan M. Gomberg, Joel P. Schaps and Steven P. Gomberg, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

This appeal concerns the award of fees to plaintiff's attorneys in her divorce action against defendant. The trial court awarded fees of $11,251 to be paid by defendant to the attorneys; namely, $10,317 to Nathan

Gomberg, and $934 to Allan Neiderman, and entered judgment thereon. Defendant appealed from the order and judgment. Subsequently, on the petition of plaintiff, the trial court awarded Gomberg $1500 to represent plaintiff on this appeal. Defendant challenges the awards of fees before this court. We reverse in part, and affirm in part as modified. The pertinent facts follow.

Plaintiff and defendant were married on May 15, 1970. On March 5, 1973, plaintiff retained attorney Niederman to represent her in this divorce action, and the complaint for divorce was filed on April 25, 1973. On October 3, 1973, attorney Gomberg entered the case as co-counsel for plaintiff. He performed the bulk of the work subsequently connected with this action.

After the defendant filed his answer and a counterclaim for divorce, an agreed order of attempted reconciliation was entered and all proceedings were suspended. On January 22, 1974, the matter was placed on the dormant calendar. On January 24 Gomberg and Niederman received $2000 in temporary fees for their work to date on the case. On April 2, 1974, the case was removed from the dormant calendar and set for trial.

A partial decree of divorce was entered on December 19, 1974, dissolving the marriage but continuing until a later date determinations concerning property settlements and attorneys' fees. Gomberg filed a petition for fees on December 15, 1975, requesting $15,425. Niederman filed a petition on January 8, 1976, requesting $5462.50. The requested fees aggregated $20,887.50. Defendant filed separate answers denying the material allegations of the petitions and prayed that the relief be denied. Hearings were held on each petition, at which Niederman, Gomberg and their witnesses testified.

Thereafter, on February 13, 1976, a supplemental decree was entered which *inter alia* awarded plaintiff $24,884.76 and defendant $73,390.38 from specified funds on deposit; allowed defendant credit for temporary alimony paid subsequent to December 20, 1974; ordered that each party keep as his or her sole property any and all of the stocks, bonds, real estate and personal property in their respective possession; and reserved alimony for plaintiff. It further provided that having heard testimony and arguments and having received documents in evidence thereon, the court was taking the request for fees under advisement with an order to issue at a later date.

On March 19, 1976, after reviewing the proceedings had concerning attorneys' fees, the trial court found that Gomberg was entitled to a fee of $12,000 plus $312.35 for costs. However, the court determined that counsel had previously received a retainer of $350 and the further amount of $1333 as a portion of the temporary fees previously allowed and paid. Accordingly, Gomberg was awarded the balance of $10,317 for fees plus

the foregoing costs. The court further found that Niederman was entitled to fees of $2100 and had received $500 as a retainer and $666 from the temporary fees previously allowed. Based thereon Niederman was awarded the balance of $934. A second supplemental decree was entered on March 19, 1976, ordering defendant to pay the fees and costs so determined and further ordered judgment and execution thereon.

Defendant on April 14, 1976, filed his notice of appeal from the award of fees. Subsequently, the trial court entered an order pursuant to plaintiff's petition requiring defendant to pay Gomberg $1500 in fees for the defense of defendant's appeal.

OPINION

■■ The general rule in divorce cases is that to justify allowance of attorneys' fees the party seeking the relief must show financial inability to pay and the ability of the other spouse to do so. (*Kaufman v. Kaufman* (1974), 22 Ill. App. 3d 1045, 318 N.E.2d 282; *Berg v. Berg* (1967), 85 Ill. App. 2d 98, 229 N.E.2d 282.) We disagree with defendant's contention that no such showing was made in the instant case.

While neither plaintiff nor defendant testified at the hearings on fees, the trial court had previously heard evidence concerning the respective assets of the parties in determining what property settlement should be entered. Based on this knowledge the trial court concluded as follows concerning the relative abilities of the parties to pay fees:

> "Now as to the final decision of the litigants, plaintiff wife is fifty-five and earns eight thousand as a gross earnings per year. She receives some twenty-one thousand dollars as part of the marital property which I had ruled upon, and the testimony is that she has a two-flat building which was occupied by the parties during their married life, and according to one of the reports, her net income from that building was three hundred dollars per year.
>
> The defendant is a stationery engineer, and he had a [*sic*] gross wages of nineteen thousand three hundred fourteen dollars. He has a six-flat building with a gross income of ten thousand six hundred and sixty dollars. Of the money that was in dispute here, he was awarded seventy thousand dollars and it appears that the Defendant has other accounts which were not contested and which amount was not determined, and the interest on those deposits was not ascertained.
> * * *
>
> This Court finds that the defendant, based on the record, is financially more able to pay attorney's fees than the Plaintiff. The Plaintiff cannot exhaust her financial resources to pay for attorney's fees in this case."

We cannot say such a conclusion was error.

■■■ Allowance of attorney's fees in a divorce proceeding rests in the sound discretion of the trial court, and exercise thereof will not be interfered with unless such discretion is clearly abused. (*Canady v. Canady* (1964), 30 Ill. 2d 440, 197 N.E.2d 42.) In this case, as noted above, the trial court had reviewed the record concerning the assets of the parties, and in view of the large fees being petitioned for, and the somewhat lesser fees actually awarded, concluded that plaintiff was unable to pay the fees. Financial inability to pay does not mean destitution. It is sufficient to support an award of fees that disbursement of the wife's funds would exhaust her own estate, or strip her of her means of support and undermine her economic stability. (See *Kaufman v. Kaufman.*) Consequently, we cannot quarrel with the trial court's decision that the plaintiff was unable to pay her fees while defendant was able to do so. However, we do agree with defendant that the amount of fees awarded in this case was unjustified and excessive.

The amount of fees to be allowed in a divorce proceeding depends on the consideration of, in addition to the relative financial abilities of the parties, the nature of the controversy, the question at issue, the significance or importance of the subject matter, the degree of responsibility involved, the standing or skill of the person employed, and the time and labor involved. (*Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661; *Greenbaum v. Greenbaum* (1973), 14 Ill. App. 3d 217, 302 N.E.2d 165.) The allowance should be only in such amount as will compensate for the services rendered, and must be fair and just to all parties concerned; namely, the attorney to be compensated, the client, and the person required to make the payment. (*Green v. Green.*) Furthermore, it should appear that the work being compensated for was reasonably required and necessary for the proper performance of the legal services involved in the case. See *Moreau v. Moreau* (1973), 9 Ill. App. 3d 1008, 293 N.E.2d 680.

■■ Application of the foregoing principles mandates that the award of fees in this case be, at the least, modified. While the standing and skill of plaintiff's attorneys is both well-recognized and unchallenged, the nature of the instant case was not such as should have, in our view, generated such extensive fees. The issues in the case were uncomplicated, the assets involved were mostly in the form of bank accounts, the total amount of money involved was not unusually large, and the case was not particularly important from the family law standpoint. (Compare *Green v. Green* and *Hall v. Hall* (1976), 43 Ill. App. 3d 97, 356 N.E.2d 1156.) Indeed, probably the most unusual aspect of the case is that plaintiff's attorneys claimed a total of $20,887.50 as being the reasonable fees incurred in obtaining a divorce and the allocation of approximately

$24,000 in marital property. While we recognize the trial court finally granted slightly more than half of the requested fees, and that a portion of the charges were attributable to defendant's own conduct (*i.e.*, failure to comply with court orders), we are still incredulous that a claim could be made that it reasonably and necessarily cost $21,000 to obtain a divorce and the allocation of $24,000 from funds on deposit in bank accounts. Thus, we feel a careful review of the record and petitions for fees is required in this case.

■■ Initially, therefore, we turn to the question of fees granted Niederman. He petitioned for fees on the following basis: 63.5 hours of office time at $75 per hour, and 7 hours of court time at $100 per hour, for a total of $5462.50. The trial court finally allowed him 28 hours of office time at $50 per hour, and 7 hours of court time at $100 per hour, which totaled $2100. After subtracting amounts already received by Niederman the court ordered that fees of $934 be paid by defendant.

In reviewing the court's action we find it necessary only to review the hours allowed by the court. The question of whether the rates allowed by the court were proper we leave for our consideration of Gomberg's petition. Preliminarily, we also note that our review of Niederman's petition reveals a listing of only 63 hours of office work, rather than 63.5.

The trial court disallowed certain items in Niederman's petition. No contention is made on appeal that these actions were error, and, in fact, we feel the court acted properly in so doing. First, the court disallowed the hours spent by Niederman conferring with Gomberg, who was brought into the case by plaintiff as co-counsel but referred to as the "succeeding attorney" by the court; The conferences and discussions generated by plaintiff's addition of lawyers could hardly be charged to defendant. The trial court also properly disallowed a number of "miscellaneous" hours allegedly spent on various telephone calls, conferences, and discussions, which were grouped together and not properly itemized. No showing was made as to what particular services these hours included, nor how necessary they were. (*Cf. Moreau v. Moreau; Murphy v. Murphy* (1975), 31 Ill. App. 3d 321, 334 N.E.2d 779.) Review of the petition reveals that the disallowed items account for a total of 46.5 hours. Therefore, the total of permissible office hours is only 16.5, and not the 28 allowed by the court. Even at the allowed $50 per hour rate this amounts to only $825, and not $1400.

As to the court hours charged by Niederman we feel a full 7 hours should not have been allowed. First, of these hours apparently one-half hour was spent filing the complaint and other documents with the clerk of the circuit court. Even assuming Niederman performed these services himself we feel they are not properly considered "court time" as would justify the higher fee charged in the use of litigation and courtroom skills.

In addition, a total of 2.5 more court hours was spent in obtaining (1) an *agreed* order granting Gomberg's appearance as co-counsel, and (2) an advancement for trial date *by agreement of counsel*. Again, such hours are not, in our view, fully compensable as court time. While such work might have required waiting for the case to be called, and/or entering discussions with opposing counsel (some of which might have just as easily been conducted by phone or in the office), once again the courtroom skills required for such work are minimal. Niederman also charged 1.5 hours of court time for an appearance on January 24, 1974, in order to obtain his temporary fees. The record reveals, however, that the transcript of that hearing consisted only of 4 pages, that Gomberg presented Niederman's request to the court for him, and furthermore, Niederman himself admitted that for an unspecified portion of that hearing he was appearing in another courtroom which was why co-counsel presented his request for fees for him. Lastly, we also note that of the total of 7 hours charged by Niederman, 3 of the hours occurred *after* Gomberg entered the case, and the record supports no compelling reason why, in this case, it was necessary to have dual representation in court. In consideration of all of these factors we find that only 2 hours of court time should have been allowed. Therefore, even at the rate allowed by the trial court, the total compensation under our findings is $1025. To the extent some of the alleged court work could properly be billed as additional office time (*i.e.*, filing the complaint, discussions with opposing counsel), we find that Niederman has been adequately compensated for his services. The record shows he received $500 from plaintiff and $666 in temporary fees from defendant; a total of $1166. Thus, it was an abuse of discretion for the trial court to order defendant to pay an additional $934 in fees to Niederman.

We next turn to the trial court's grant of fees to Gomberg. His petition requested fees on the following basis: 130.5 hours of office time at $50 per hour, and 89 hours of court time at $100 per hour, for a total of $15,425. The court finally allowed 90 hours of office time at $50 per hour, and 75 hours of court time at $100 per hour, for a total of $12,000. After deducting amounts already received by Gomberg the court ordered that fees of $10,317 be paid by defendant.

Gomberg's petition was compiled from his own case docket which listed the services performed in this case over a three-year period and the date of such services. However, Gomberg testified that he did not maintain contemporaneous records of the time spent rendering such services, so he estimated the time involved when he drew up his petition in 1975. This failure to keep time records greatly increases the difficulty in determining a proper fee. (*Flynn v. Kucharski* (1974), 59 Ill. 2d 61, 319 N.E.2d 1.) However, estimates can properly be considered by the court.

(See *Van Fleet v. Van Fleet* (1977), 50 Ill. App. 3d 172, 365 N.E.2d 1143.) Although they are clearly more susceptible to error, and thus more suspect than more properly maintained time records.

■■ Concerning the office hours charged by Gomberg, the court once again properly disallowed certain items, which action is not being challenged on appeal. The court disallowed the time spent conferring with Niederman when Gomberg first entered the case, and eliminated the hours spent by Gomberg replying to a complaint filed against him by defendant with the bar association. When these items are added to the "miscellaneous" hours claimed in the petition, which as we noted earlier are not proper for lack of specific itemization and lack of a showing of necessity and reasonableness, the total is 54.5 hours. Subtracting this figure from the total in Gomberg's petition gives us only 76 hours of allowable office time, and not the 90 hours allowed by the trial court.

In addition, further items of office time must be seriously questioned as being reasonable and necessary to the proper performance of legal services in this case. For example, the petition claims 2.5 hours for review of defendant's answer and counter-complaint in this case. Neither document is particularly complex or involved and there was no showing that such a time expenditure was necessary or reasonable, or that defendant was responsible for it (see *Moreau v. Moreau*), especially in light of Gomberg's substantial experience in divorce law. Similar claims are made for other relatively simple office work (*i.e.,* telephone conversations, review of letters and documents received, preparation of documents and letters to be sent, and mailing of authorizations and decrees to defendant) for which the total time charged is, in our view, excessive. While such time may actually have been spent in performance of such duties, in fairness to defendant he may only be charged with that time that should necessarily have been spent at such tasks. We therefore further reduce the allowable office time to 66 hours.

As to the court time charged by Gomberg, the trial court reduced the hours from 89 to 75. One possible basis for at least a portion of this reduction is that on certain court appearances Gomberg might have had other cases before the same judge, and thus spent part of his time working on these other cases. In any event, the disallowance of 14 hours is not challenged on appeal. Once again, however, we find that further reductions should have been made.

Our review of the record indicates that a large portion of the charged court time was spent in obtaining continuances and entering agreed orders. For example, the petition alleges that on December 9, 1974, Gomberg spent 1.5 hours in this case before Judge Friedlund. The record on that date reveals an *agreed* order that a rule to show cause be entered against defendant for certain arrearages, and setting December 12 as the

return date for the rule. The order was typed and prepared before going to court, with only the dates being filled in by hand. This court cannot condone a charge of 1.5 hours of court time for such work, especially when charged at such a substantial rate. Indeed, our review of the record reveals that a total of approximately 27.5 hours in court time was charged for obtaining approximately 21 agreed orders or continuances. We do not doubt that, as Gomberg testified, much of this time was devoted to discussions, conferences, and waiting for his case to be called; however, in fairness to defendant, who must assume the fees, we cannot justify billing the full amount of such estimated time as necessary court time. Likewise, we note that the petition alleged 1.5 hours on January 24, 1974, when Gomberg obtained temporary fees at a hearing before Judge Friedlund. Yet, as previously noted, the transcript of the proceedings for that hearing consists of only 4 pages. While the trial court may have considered some of these factors in its reduction of hours, we further reduce the amount of court time which can fairly be charged to defendant as reasonably necessary for the proper performance of legal services in this case to 69 hours.

Having determined the proper amount of hours allowable in this case, we next turn to the question of the rate of compensation per hour. We do not agree with plaintiff that defendant has waived this issue. In his answer to the petition for fees defendant placed the reasonableness of the hourly rates charged in question. Furthermore, it is the duty of this court to review the fairness, adequacy and reasonableness of the fees in light of our own knowledge and experience in such matters. See *Welsh v. Welsh* (1976), 38 Ill. App. 3d 35, 347 N.E.2d 512.

As noted, in this case the court allowed fees of $50 per office hour and $100 per court hour. Based on these rates, the average hourly rate allowed Gomberg was almost $73 per hour. We agree with defendant's contention that this is excessive. There appears to be nothing novel, unique or extraordinary about the services rendered which would justify such a rate.

This court has recently examined in some detail the rate of compensation allowable for attorney's fees in a contested proceeding in *Green v. Green* (1976), 41 Ill. App. 3d 154, 354 N.E.2d 661. In that case, after examining numerous cases concerning fees, the fee was reduced by $30,000. The *Green* court noted that even in a complex and difficult class action suit where the allowance of fees was contingent on a favorable result, our supreme court had allowed fees of only $75 per hour. (See *Flynn v. Kucharski.*) In *Green*, this court allowed a rate of approximately $60 per hour.

■■ The instant case appears to us to have been a fairly ordinary divorce case. The results of the case were not extraordinary and while

certain work was necessarily engendered by defendant's failure to promptly comply with certain court orders (*i.e.*, temporary support payments and orders to produce documents and records), this case certainly did not involve the type of complex litigation and assets present in the *Green* case. Nor did it involve the type of work necessary in the aforementioned *Flynn* class action case, wherein an average fee of $75 per hour was allowed. In consideration of these circumstances and precedents, we conclude that a fair overall rate in this case would be $45 per hour. (Compare *Greenbaum v. Greenbaum*.) We are of the opinion this would constitute adequate compensation for the necessary services performed. Thus, Gomberg's total fees would be $6075 ($45 x 135 hours). After subtracting the fees already received by Gomberg ($1683), the total to be paid by defendant amounts to $4392. Therefore, the allowance of $10,317 in fees shall be modified and reduced to $4392.

■■ Finally, we turn to the question of the court's allowance of $1500 in attorney's fees for purposes of appeal pursuant to plaintiff's petition. The allowance of attorney's fees for appeal rests within the sound discretion of the trial court, which allowance will not be disturbed on review in the absence of a clear showing of abuse. (*Green v. Green.*) The fees may be allowed only upon a finding of inability to pay by the petitioning spouse, and that the other spouse is able to pay. (*Green v. Green.*) In the instant case such a finding of fact is implied by the court's order of fees, and as such must be accorded the same weight as an express finding. See *Stirs, Inc. v. City of Chicago* (1974), 24 Ill. App. 3d 118, 320 N.E.2d 216.

Initially, we must note that this appeal is only concerned with the trial court's award of fees to the attorneys for plaintiff. It is also significant to note that no attorney-client agreement has been alleged or offered to indicate that plaintiff would be obligated to pay any appeal fee if defendant does not do so. The decree for divorce and the provisions of the property settlement have not been challenged by plaintiff. Thus, while plaintiff is nominally the appellee, it appears that the real interests here are those of her attorneys. Furthermore, while defendant did possess more assets than plaintiff, we feel the record does not reflect that plaintiff was unable to pay reasonable fees for purposes of defending the appeal. In addition to having been granted fees for the divorce proceedings, plaintiff was awarded almost $24,000 in cash together with other property, earned $8000 annually, had no dependents, and retained the right to claim alimony. Moreover, the sum necessary to defend the single issue on appeal would necessarily be much more moderate than the fees in the trial court. Even assuming the expense of such appeal is $1500, which amount is not contested by defendant, the record does not indicate that such payment by plaintiff would undermine her economic stability, particularly since the question of alimony was reserved by the court for

588

her benefit. Under these circumstances, we conclude that the trial court erred in finding plaintiff unable to pay the fees on appeal and in awarding such fees.

For the foregoing reasons the order of the circuit court granting plaintiff's attorney Allan Niederman $934 in fees is reversed; the order granting attorney Nathan Gomberg $10,317 in fees is modified and reduced to $4392; and the order granting plaintiff $1500 in fees for purposes of this appeal is reversed.

Reversed in part; affirmed in part as modified.

LORENZ and WILSON, JJ., concur.